UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| POLLY ANN KINTER, | CASE NO. 5:15CV1752 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| CAROLYN W. COLVIN[1], ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Plaintiff Polly Ann Kinter ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").  ECF Dkt. #1.  In her brief on the merits, filed on December 8, 2015, Plaintiff claims that the administrative law judge ("ALJ") erred by failing to: (1) comply with the Court's May 3, 2013 Memorandum Opinion and Order remanding the case to Defendant for further proceedings; (2) properly evaluate Plaintiff's credibility; and (3) satisfy the burden placed on the ALJ at step five of the sequential evaluation.  ECF Dkt. #14 at 11-19.  On March 7, 2016, Defendant filed a response brief.  ECF Dkt. #19.  Plaintiff filed a reply brief on March 21, 2016.  ECF Dkt. #20.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

---

[1] On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Initial ALJ Decision

On January 11, 2008, Plaintiff filed applications for DIB and SSI. ECF Dkt. #11 ("Tr.") at 21.[2] In both applications, Plaintiff alleged a period of disability beginning January 7, 2008. *Id.* Plaintiff's claims were denied initially and upon reconsideration. *Id.* On September 25, 2008, Plaintiff requested a hearing before an ALJ, and a video hearing was held on May 26, 2010. *Id.* Following the hearing, the ALJ denied Plaintiff's applications for DIB and SSI on September 20, 2010. *Id.* at 18.

On February 29, 2012, Plaintiff filed suit, requesting judicial review of Defendant's final decision denying her applications for DIB and SSI. *Kinter v. Comm'r of Soc. Sec.*, No. 5:12CV490 ("*Kinter I*"), ECF Dkt. #1.[3] After the case was fully briefed, the undersigned issued a Report and Recommendation on April 18, 2013 recommending that:

> [T]he Court reverse the ALJ's decision and remand the decision for reevaluation and further analysis of whether Plaintiff has any non-exertional impairments and whether direct application of the Grids is proper.

*Kinter I*, ECF Dkt. #18 at 18-19. After being notified that no objections would be filed by Defendant, the Court accepted the undersigned's decision and reversed and remanded this matter to Defendant for further proceedings. *Kinter I*, ECF Dkt. #20, #21.

### B. Subsequent ALJ Decision

Following the May 3, 2015 remand of this matter to the ALJ, a second hearing was held on January 16, 2014. Tr. at 526. On February 25, 2014, the ALJ issued a decision, again denying Plaintiff's applications for DIB and SSI for the period of September 5, 2008, the amended onset

---

[2] All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

[3] Citations to the docket of the instant case will be referred to herein simply by the ECF Dkt. # assigned to the filing followed by the page number, with the exception being citations to the Transcript, which, as defined above, will be cited as "Tr." followed by the page number. All citations to the docket of Plaintiff's previous case, *Kinter v. Comm'r of Soc. Sec.*, No. 5:12CV490, will be prefaced by "*Kinter I*" followed by the ECF Dkt. # assigned to the filing and the page number.

date, to September 20, 2010, the date of the second decision. *Id.* at 526. In the section of her decision regarding jurisdiction and procedural history, the ALJ acknowledged that "[t]he District Court remanded the case for reevaluation and further analysis of whether [Plaintiff] has any non-exertional impairments and whether the direct application of the Grids is proper." *Id.* The ALJ also recognized that Plaintiff filed a subsequent application and it was determined on April 12, 2011 that Plaintiff was disabled beginning September 21, 2010, the day after the initial decision from the ALJ was issued regarding Plaintiff's applications for DIB and SSI currently at issue. Tr. at 526, 640.

In her findings of fact and conclusions of law, the ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. Tr. at 529. Continuing, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 7, 2008.[4] *Id.* The ALJ stated that Plaintiff suffered from the following severe impairments: coronary artery disease, status post myocardial infarction, status post surgeries; hypertension; peripheral vascular disease; and obstructive sleep apnea. *Id.* In addition to the above severe impairments, the ALJ found that Plaintiff suffered from dyslipidema, but that it was a non-severe impairment because it did not impose more than minimal limitations on Plaintiff's ability to perform basic work-related activities for a period of twelve consecutive months. *Id.* Following her analysis of Plaintiff's impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ stated that she afforded great weight to the opinion of medical expert Jack Lebeau, M.D., indicating that Plaintiff's impairments did not meet or medically equal any listed impairment. *Id.* Continuing, the ALJ indicated that she considered the opinion of the state agency medical consultants who evaluated Plaintiff's impairments at the initial and reconsideration levels of administrative process before coming to the same conclusion as Dr. Lebeau. *Id.* at 530.

---

[4]It is unclear why the ALJ cited January 7, 2008 as the alleged onset date since the ALJ had already recognized that Plaintiff amended her alleged onset date to September 5, 2008. *See* Tr. at 526.

After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that Plaintiff was limited to: standing and/or walking two hours per day, one hour at a time; occasionally pushing and pulling; never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasionally kneeling, crouching, or crawling; avoiding concentrated exposure to fumes, odors, dusts, gases, and poorly ventilated areas; avoiding all exposure to workplace hazards such as unprotected heights or hazardous machinery; and moderate exposure to extremes of temperature, *i.e.*, temperatures other than those found in an office environment. Tr. at 530. Continuing, the ALJ discussed Plaintiff's hearing testimony, during which Plaintiff indicated that she had difficulty sitting, standing, walking, climbing stairs, lifting, kneeling, squatting, reaching, bending, and completing tasks. *Id.* at 31. The ALJ also noted the Plaintiff testified that she could not lift more than ten pounds or walk more than a block or two, and that she woke frequently during the night when her extremities became numb due to soreness in her chest or an inability to breathe. *Id.* Further, the ALJ indicated that Plaintiff claimed that she occasionally forgot to take her medication, did not need reminders to take care of her personal needs or grooming, and testified that she could sit for fifteen to twenty minutes, walk for ten to fifteen minutes, stand for up to thirty minutes, and lift and carry ten to twenty pounds. *Id.*

The ALJ stated that Plaintiff's children and a neighbor wrote letters expressing their concern and claiming that Plaintiff "cannot do much since her heart attack." Tr. at 531. These opinions were afforded little weight by the ALJ because Plaintiff's children and neighbor were not acceptable medical sources and their close personal relationships with Plaintiff created a possibility of bias. *Id.*

Continuing, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. Tr. at 531. The ALJ then described the treatment Plaintiff received for her coronary artery disease during the period for which she was seeking disability benefits. *Id.* at 531-32. Next, the ALJ discussed Plaintiff's obstructive sleep apnea and hypersomnia, noting that Plaintiff did not use her continuous

-4-

positive airway pressure ("CPAP") mask because it does not fit, and because she could not afford to use the mask since she had no insurance. *Id.* at 532. The ALJ then stated that Plaintiff's hypertension was controlled with medication. *Id.*

Next, the ALJ discussed the opinion of Lynne Torello, M.D., a reviewing state agency medical consultant. Dr. Torello opined that Plaintiff could: lift, carry, push, and pull twenty-five pounds frequently and fifty-pounds occasionally; sit, stand, and/or walk for about six hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; and frequently balance, stoop, kneel, crouch, and crawl. Tr. at 532. The ALJ also stated that Plaintiff must avoid concentrated exposure to temperature extremes and humidity. *Id.* Regarding the weight afforded to Dr. Torello's opinion, the ALJ indicated that the opinion was given some weight, however, based on the evidence adduced at the hearing level, Plaintiff was more limited than Dr. Torello opined. *Id.*

The ALJ also addressed the opinion of Plaintiff's treating physician, Mahmud Kara, M.D., who opined that Plaintiff could: lift or carry five pounds occasionally; stand and/or walk one hour in an eight-hour workday; never climb, balance, stoop, or crawl; and occasionally crouch and kneel. Tr. at 532. Continuing, the ALJ indicated that Dr. Kara gave no limitation as to Plaintiff's ability to sit, and opined that her reaching, handling, pushing, and pulling were affected. *Id.* The ALJ also stated that Dr. Kara indicated that Plaintiff must avoid heights, moving machinery, temperature extremes, dust fumes, humidity, and vibrations. *Id.* Regarding the weight afforded to Dr. Kara's opinion, the ALJ indicated that she afforded the opinion partial weight to the extent that it was consistent with the medical evidence of record. *Id.*

Continuing, the ALJ discussed the opinion of Dr. Lebeau, who opined that Plaintiff could: sit for seven hours in a day without breaks; stand and/or walk for four hours a day, one hour at a time; lift, carry, push, or pull ten pounds frequently and twenty pounds occasionally, based on her stress tests; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; and occasionally kneel, crawl, and crouch. Tr. at 532-33. The ALJ indicated that Plaintiff should avoid all exposure to unprotected heights, moving machinery, fumes, gases, odors, and pulmonary irritants. *Id.*

After this summary of the exertional and non-exertional limitations prescribed to Plaintiff by her physicians, the ALJ found that her RFC assessment was supported by the totality of the medical evidence, objective findings, and the opinions of individuals who had the opportunity to assess Plaintiff. Tr. at 533. Further, the ALJ stated that while she did not doubt that Plaintiff experienced significant limitations, Plaintiff's symptoms were not so severe as to prohibit the performance of basic work activities. *Id.* The ALJ opined that Plaintiff's activities of daily living belied her allegations of complete disability because Plaintiff was able to: bathe, dress, groom, and care for her personal hygiene without assistance; prepare simple meals and feed herself; perform household chores such as cleaning dishes and dusting; use public transportation and drive; go out unaccompanied and shop in stores; count change and use a checkbook and money orders; and pay bills and handle a savings account. *Id.* Continuing, the ALJ stated that Plaintiff watched television and played cards or dice for fun, socialized on the telephone, and did not have trouble getting along with family, friends, neighbors, authority figures, or others. The ALJ noted that Plaintiff indicated that she could pay attention for any length of time and that she could follow spoken or written instructions without difficulty. *Id.* Additionally, the ALJ opined that Plaintiff was noncompliant with medical treatment and advise as she continued to smoke tobacco and marijuana, and had only used her CPAP mask three or four times despite it being prescribed for three months. *Id.*

The ALJ found that Plaintiff was unable to perform any past relevant work, was classified as a younger individual, had at least a high school education, and was able to communicate in English. Tr. at 533-34. Continuing, the ALJ determined that the transferability of jobs skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. *Id.* at 534. After considering Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* Based on the above, the ALJ found that Plaintiff had not

been under a disability, as defined in the Social Security Act, from January 7, 2008 through September 20, 2010.[5]

## II. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## III. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings

---

[5]Again, it is unclear why the ALJ cited January 7, 2008 as the alleged onset date since the ALJ had already recognized that Plaintiff amended her alleged onset date to September 5, 2008. *See* Tr. at 526.

of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007).  Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001).  However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## IV. LAW AND ANALYSIS

### A. Compliance With the Court's Prior Order

Plaintiff first asserts that the ALJ failed to comply with the Court's May 3, 2013 Order remanding this matter for further proceedings consistent with the April 18, 2013 Report and Recommendation, which recommended that the case be remanded for reevaluation and further analysis of whether Plaintiff had non-exertional impairments and whether direct application of the Grids was proper. ECF Dkt. #14 at 11-12 (internal citation omitted).  In support of this assertion, Plaintiff claims that the ALJ did not discuss non-exertional impairments at all except to catalog Plaintiff's complaints as evidenced in her hearing testimony. *Id.* at 12.  Further, Plaintiff asserts that the ALJ afforded the opinion of Dr. Kara, Plaintiff's treating physician, only partial weight to the extent that it was consistent with the medical evidence of record, however, the ALJ rejected Dr.

Kara's opinion that Plaintiff could only lift five pounds and not stand for more than one hour per day.[6]  *Id.*

Additionally, Plaintiff claims that the Court directed the ALJ to consider whether direct application of the Grids was appropriate when the initial hearing was four months before Plaintiff's fiftieth birthday.  ECF Dkt. #14 at 13.  Continuing, Plaintiff asserts "[i]n using the Grid as a framework and having [vocational expert] testimony, the [subsequent] ALJ obviously felt that she had addressed [this issue]." *Id.*  Finally, Plaintiff asserts that the ALJ erred when applying the Grid mechanically.  *Id.* at 14.

Defendant argues that the ALJ cited substantial evidence in support of her RFC finding.  ECF Dkt. #19 at 9.  Specifically, Defendant provides a summary of Plaintiff's medical record before discussing the opinion evidence provided by Plaintiff's physicians.  *Id.* at 9-11.  Defendant first addresses the opinion offered by Dr. Lebeau, indicating that Dr. Lebeau's opinion is reflected in the RFC finding.  Dkt. #19 at 12.  Regarding Dr. Torello's opinion, Defendant restated the opinion and then indicated that the ALJ explained the weight afforded to the opinion by stating "evidence adduced at the hearing level [supported] that [Plaintiff was] more limited than Dr. Torello opined." *Id.* (citing Tr. at 532).  Defendant then addressed the opinion of Dr. Kara.  First, Defendant asserts that the ALJ properly explained that she discounted Dr. Kara's opinion to the extent that it was inconsistent with medical evidence.  *Id.* at 13.  To support her position, Defendant indicates that "the ALJ discussed numerous notes that consistently showed Plaintiff had no such limitations on examination and that her muskoskeletal and neurological symptoms were completely normal." *Id.*  Further, Defendant states that the ALJ also relied on medical opinions from Dr. Lebeau and Dr. Torello that agreed that Plaintiff had no reaching or handling limitations.  *Id.*

The April 18, 2013 Report and Recommendation, which was accepted by the Court on May 3, 2013, instructed the ALJ as follows:

> Since it is clear that the ALJ failed to explain why he rejected the non-exertional limitations opined by Dr. Kara and Dr. Torello, the undersigned recommends that the

---

[6]As discussed below, Plaintiff does not argue that the ALJ violated the treating physician rule in her opening brief.  Nowhere in Plaintiff's opening brief is the treating physician rule, or any applicable law thereto, mentioned, and Plaintiff did not indicate she was raising the issue in any assignment of error.

> Court REMAND this case for further evaluation, analysis and explanation concerning the non-exertional limitations, if any, that Plaintiff had. Upon remand, if the ALJ again finds that Plaintiff has no non-exertional impairments, [she] must explain why [she] found none to exist despite physician opinions, including a treating physician's opinion, finding to the contrary. *If the ALJ finds that Plaintiff does have non-exertional impairments, the ALJ must either explain how those limitations are not severe enough to restrict a full range of gainful employment at the designated level or he or she must proceed to use the Grids as only a framework and obtain a VE to testify at the hearing.*

*Kinter I*, No. 5:12CV490, ECF Dkt. #18 at 18 (emphasis added). Upon remand, the ALJ determined that Plaintiff did have non-exertional limitations, providing the following RFC assessment:

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the [RFC] to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except that she can only stand and/or walk two hours per day, one hour at a time. She can only occasionally push and pull; she can never climb ladders, ropes, scaffolds; and *she can only occasionally climb ramps and stairs, or kneel, crouch, or crawl. She must avoid concentrated exposure to fumes, odors, dusts, gases, and poorly ventilated areas, and exposure to workplace hazards such as unprotected heights or hazardous machinery. She is limited to moderate exposure to extremes of temperature, i.e., temperatures other than you would find in an office environment.*

Tr. at 530 (emphasis added). Accordingly, the ALJ determined upon remand that Plaintiff did have non-exertional limitations. Further, the non-exertional limitations prescribed by the ALJ are more restrictive than the limitations imposed by Dr. Torello, and largely reflective of the non-exertional limitations imposed by Plaintiff's treating physician, Dr. Kara. *See* Tr. at 294-301, 429-431, 530. Plaintiff's assertion that the ALJ failed to address her non-exertional limitations except to catalog her complaints as evidenced in her hearing testimony is without merit; rather, upon remand the ALJ accepted the majority of the non-exertional limitations contained in the opinion of Plaintiff's treating physician and imposed more restrictive non-exertional limitations than the limitations imposed by a state agency reviewing physician. *See* ECF Dkt. #14 at 12. Plaintiff argues in her reply brief that the ALJ violated the treating physician rule, contending that the ALJ did not include all of the non-exertional limitations contained in the opinion of Dr. Kara, and that the ALJ cannot disregard portions of a treating source opinion while taking note of the parts that support her decision. ECF Dkt. #20 at 3. However, Plaintiff did not assert that the ALJ violated the treating physician rule in her opening brief, instead first raising the issue in her reply brief. *See* ECF Dkt. #20 at 3-4. It is well established that new substantive issues cannot be raised in a reply brief, and

thus Plaintiff waived the argument that the ALJ violated the treating physician rule when the argument was not raised in her opening brief. *See United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001) (citing *United States v. Jerkins*, 871 F.2d 598, 602 n. 3 (6th Cir. 1989)).

Since the ALJ did find that Plaintiff had non-exertional limitations when formulating her RFC finding, the Court's remand order then required "the ALJ [to] either explain how those limitations are not severe enough to restrict a full range of gainful employment at the designated level *or* [proceed] to use the Grids as only a framework and obtain a VE to testify at the hearing." *Kinter I*, No. 5:12CV490, ECF Dkt. #18 at 18 (emphasis added). Instead of using the Grids mechanically like the previous ALJ in *Kinter I*, the ALJ used the Grids as a framework and obtained a VE to testify at the hearing. *See* Tr. at 27, *Kinter I*, No. 5:12CV490, ECF Dkt. #18 at 18. After determining that Plaintiff did have non-exertional limitations, the ALJ did not apply the Grids mechanically, and instead obtained a VE to testify at Plaintiff's second hearing. These actions were in compliance with the Court's May 3, 2013 Order. Accordingly, Plaintiff has failed to demonstrate that this case should be remanded on the basis of a violation of the Court's May 3, 2013 Order initially remanding this matter.

### B. Credibility

Plaintiff next asserts that the ALJ failed to properly evaluate her credibility. ECF Dkt. #14 at 14. As an initial matter, the Court notes that Plaintiff raised a similar argument in *Kinter I*, and the Court determined that the ALJ did not err in his determination that Plaintiff was not entirely credible. *Kinter I*, No. 5:12CV490, ECF Dkt. #19 at 9-15. However, since Plaintiff was granted a second hearing, the Court will again determine whether the ALJ erred in determining that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Plaintiff asserts that minimal activities of daily living do not show an ability to engage in substantial gainful activity. *Id.* at 15. Continuing, Plaintiff claims that her chest pain and shortness of breath were the basis for her belief that she could not sustain full-time work, and that she raised these issues at both hearings. *Id.*

Defendant contends that the ALJ properly articulated many reasons for finding that Plaintiff was not entirely credible. ECF Dkt. #19 at 15. Namely, Defendant indicates that the ALJ found

-11-

Plaintiff's allegations of disabling impairments inconsistent with the medical evidence, which largely showed that Plaintiff had a positive response to treatment for all of her conditions and was otherwise in generally normal health. *Id.* Defendant cites to numerous locations on the record that she believes show that Plaintiff's procedures successfully resolved her symptoms. *Id.* at 16 (citing Tr. at 180, 267, 275, 313, 325, 331-32, 333-35, 398, 414-15, 462-63, 483, 485, 820, 876, 881, 914, 921-23)). Continuing, Defendant asserts that the ALJ considered Plaintiff's noncompliance with medical recommendations, providing the example of Plaintiff's continued use of tobacco and marijuana despite numerous recommendations from multiple doctors that she quit smoking, as well as Plaintiff's noncompliance regarding use of her CPAP mask. *Id.* Additionally, Defendant asserts that Plaintiff's activities of daily living supported a finding that Plaintiff was not as functionally limited as alleged. *Id.*

An ALJ may discount a claimant's credibility when she finds contradictions among the medical records, the claimant's testimony, and other evidence. *Walter v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "It is for the [Commissioner] and [her] examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 249 (6th Cir. 2007).

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. §§ 404.1529, 416.929. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective *medical evidence that confirms the severity of the alleged disabling pain arising from that condition,* or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *Id.; Stanley v. Sec'y of Health and Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038–1039 (6th Cir. 1994); *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could

-12-

reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96–7p. *See* SSR 96–7p, 61 Fed.Reg. 34483, 34484–34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039–40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility as to pain should accord great deference to that determination. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir.1993). Nevertheless, an ALJ's assessment of a claimant's credibility as to pain must be supported by substantial evidence. *Walters*, 127 F.3d at 531. The ALJ in this case discounted Plaintiff's complaints of pain and limiting effects based on her daily living activities and her failure to comply with treatment recommendations . Keeping in mind the standard of review and that even if substantial evidence exists to the contrary, this Court cannot reverse the ALJ's decision if it is based on substantial evidence. *See Abbott*, 905 F.2d at 922.

The ALJ indicated that Plaintiff was able to perform the following activities of daily living: bathe, dress, groom, and care for her personal hygiene without assistance; prepare simple meals and feed herself; perform household chores such as cleaning dishes and dusting; use public transportation and drive; go out unaccompanied and shop in stores; count change and use a checkbook and money orders; and pay bills and handle a savings account. Tr. at 533. Continuing,

the ALJ stated that Plaintiff watched television and played cards or dice for fun, socialized on the telephone, and did not have trouble getting along with family, friends, neighbors, authority figures, or others. The ALJ noted that Plaintiff indicated that she could pay attention for any length of time and that she could follow spoken or written instructions without difficulty. *Id.* Additionally, the ALJ opined that Plaintiff was noncompliant with medical treatment and advice as she continued to smoke tobacco and marijuana, and had only used her CPAP mask three or four times despite it being prescribed for three months. *Id.*

The Court finds that the ALJ's credibility determination was based on substantial evidence. In making her determination, the ALJ relied upon medical records, the claimant's testimony, and other evidence, namely, Plaintiff's noncompliance with treatment recommendations. The ALJ cited numerous medical records indicating that Plaintiff was benefitting from her treatment. Tr. at 531-32 (citing Tr. at 180, 267, 275, 313, 325, 331-32, 333-35, 398, 414-15, 462-63, 483, 485, 820, 876, 881, 914, 921-23). Plaintiff's activities of daily living supported a finding that Plaintiff's limitations were not as severe as alleged as she participated in a variety of normal day-to-day activities that support a conclusion that Plaintiff was not as functionally limited as she claimed. Additionally, Plaintiff's noncompliance with numerous medical recommendations to cease smoking and to use her CPAP mask undermined her credibility as to the disabling effect of her impairments. Even accepting Plaintiff's explanation that the failure to comply with her physicians' instructions to use the CPAP mask was due to the lack of insurance or funds to pay for the treatment, Plaintiff still continued to smoke throughout the course of her treatment despite repeated recommendations advocating smoking cessation. As such, the ALJ's analysis of Plaintiff's credibility was supported by substantial evidence and Plaintiff's arguments fail.

### **C.** **Step Five of the Sequential Evaluation**

Plaintiff also asserts that the ALJ did not carry her burden at step five of the sequential evaluation. ECF Dkt. #14 at 16. In support of her argument, Plaintiff alleges that the ALJ did not include Plaintiff's non-exertional limitations in the hypothetical question that she posed to the VE. *Id.* at 17. Plaintiff is incorrect. The hypothetical question the ALJ posed to the VE included the same limitations as the RFC finding the ALJ included in her decision. Tr. at 530, 590-91. As

discussed above, this RFC finding addressed Plaintiff's non-exertional limitations, and, accordingly, the hypothetical question posed by the ALJ to the VE included Plaintiff's non-exertional limitations. Plaintiff also asserts that the ALJ asked the VE about the availability of a competitive job for an individual who would be off twenty percent of the time and the availability of a job for an individual who could only lift five pounds. ECF Dkt. #14 at 17. The VE replied that no job would be available for individuals with either of these additional impairments. Tr. at 591-93. Continuing, Plaintiff then asserts that "[t]he ALJ did not consider or use the information from this hypothetical." Plaintiff does not provide an explanation as to how she believes the ALJ's decision not to consider or use the "information from the hypothetical" warrants a remand of this case. *See* ECF Dkt. #14 at 17.

Additionally, Plaintiff takes issue with the number of jobs available in the professions offered by the VE as jobs that could be performed by Plaintiff despite her limitations. ECF Dkt. #14 at 18. The VE testified that Plaintiff could perform work as a polisher, call center operator, order clerk, mailing house worker, and document preparer. *Id.* Tr. at 534. Based on the testimony of the VE, there were 1,615 jobs available in these professions in Northeastern Ohio and 209,000 jobs available in these professions nationally. *Id.* Plaintiff cites *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988), to indicate that the Sixth Circuit has noted that there is difficulty in enumerating what exactly constitutes a significant number of available jobs. In *Hall*, the Sixth Circuit held that 1,350 jobs constituted a significant number, but also indicated that the 1,350 figure was not a magic number to use when determining whether jobs exist in significant numbers, instead providing factors that district courts should take into consideration when making a determination. Continuing, Plaintiff suggests jobs that do not offer more than 50,000 positions nationally should not be considered to be jobs that exist in significant numbers regionally or nationally. However, Plaintiff does not provide any support for her suggestion beyond claiming that it defies common sense to consider such jobs when considering whether a significant number of jobs exist.

Plaintiff's arguments are not well taken. As far as an analysis of the *Hall* factors, Plaintiff provides no argument as to how any of the factors weigh in her favor and the Court will not manufacture an argument on behalf of Plaintiff. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96

-15-

(6th Cir. 1997); *United States v. Phibbs*, 999 F.2d 1053, 1080, n. 12 (6th Cir. 1993), *cert. denied,* 510 U.S. 1119 (1994). Instead of presenting a theory of how the *Hall* factors weigh in favor of a finding that jobs that Plaintiff could perform do not exist in significant numbers, Plaintiff asserts that a finding that jobs exited in significant numbers based on 1,615 regional jobs and 209,000 national jobs defies common sense. Again, Plaintiff does not explain how she believes such a finding would defy common sense, and provides no additional information in support of a conclusion that Plaintiff is unable to find work in one of the 209,000 jobs that the VE testified existed in the national economy, or that 209,000 was not a significant number of jobs. Additionally, the Court is not inclined to adopt Plaintiff's suggestion that any job that offers less than 50,000 positions nationally cannot be considered to exist in significant numbers, especially when the suggestion is devoid of support. According, Plaintiff has failed to show that the ALJ erred at step five of the sequential evaluation.

**V.     CONCLUSION**

For the reasons stated above, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

Date: August 5, 2016           */s/George J. Limbert*
                                GEORGE J. LIMBERT
                                UNITED STATES MAGISTRATE JUDGE